UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDLINK HEALTH SOLUTIONS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>MADDOX DEFENSE INC., et al.,<br><br>        Defendants. | Case No.: 22-cv-1306-AGS-DEB<br><br>**ORDER:**<br>**(1) GRANTING BATCHELOR SUMMARY JUDGMENT (ECF 71);**<br>**(2) GRANTING IN PART MOTIONS TO SEAL (ECF 69, 78, 83); AND**<br>**(3) DENYING REQUEST FOR JUDICIAL NOTICE (ECF 71-5)** |

  This summary-judgment motion turns on whether the parties' mutual release is valid.

## BACKGROUND

  In a separate lawsuit in Texas, disposable-gown manufacturer Wildcat PPE, LLC, sued several of the parties to the present litigation, including now-plaintiff Medlink Health Solutions, LLC, and now-defendant ECT Medical, LLC. (ECF 77-1, at 3.) In the Texas case, "Medlink and ECT entered into a Confidential Settlement Agreement," including a mutual release of claims. (*Id.*) Medlink specifically agreed to "release[] and discharge[] ECT, [ECT's Vice President] Elgin Tracy, . . . [and their] attorneys including but not limited to Charles Batchelor . . . from any and all claims" that "Medlink has or may have" against them. (*Id.* at 5; ECF 70-2, at 5.)

  Later, Medlink alleged that it was fraudulently induced into signing that release. Deeming the release void, Medlink brought this suit against ECT, Tracy, Batchelor, and others.

## DISCUSSION

### MOTION FOR SUMMARY JUDGMENT

  Batchelor moves for summary judgment on the ground that "all of Medlink's claims against [him] are barred by [the] release." (ECF 70, at 15.) No one disputes that Batchelor, as a named intended beneficiary, has standing to enforce the contract. Summary judgment is proper when the record, taken in the light most favorable to the nonmoving party,

1

1  demonstrates that "there is no genuine dispute as to any material fact and the movant is
2  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
3       "Settlement and release is an affirmative defense," *In re Cellular 101, Inc.*, 539 F.3d
4  1150, 1155 (9th Cir. 2008), and "the burden is always on the party advancing an affirmative
5  defense to establish its validity," *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 n.1
6  (9th Cir. 2024). "When the party moving for summary judgment would bear the burden of
7  proof at trial, it must come forward with evidence which would entitle it to a directed
8  verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v.*
9  *Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (cleaned up). Only when the
10 moving party satisfies this high standard does "the burden then move[] to the opposing
11 party, who must present significant probative evidence tending to support its claim or
12 defense." *Intel Corp. v. Hartford Acc. & Indem.*, 952 F.2d 1551, 1558 (9th Cir. 1991)
13 (cleaned up).
14      Medlink argues that Batchelor failed to meet his initial burden because he did not
15 "provide any admissible evidence to support" his motion. (ECF 77, at 6.) In addition,
16 Medlink contends the release was "procured through . . . fraudulent misrepresentation" and
17 is therefore "voidable." (*Id.*)

18 **A.     Authentication**

19      As a threshold issue, Medlink insists that the release is not properly authenticated
20 because "the only person who has submitted a declaration in support" of it is "Batchelor's
21 attorney," who lacks "personal knowledge" of the document. (ECF 77, at 6.) Ultimately,
22 this issue is moot, as Batchelor has since cured any authentication problems. "A document
23 can be authenticated [through personal knowledge] by a witness who wrote it, signed it,
24 used it, or saw others do so." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 n.8 (9th Cir.
25 2002). According to a declaration attached to his reply, Batchelor was "personally involved
26 in the negotiation, drafting, and execution" of the release, and he "has personal knowledge"
27 of its contents. (ECF 82-1, at 2.) Because this declaration remedies any authentication
28 defects, the release is properly before the Court. *See Mountain W. Holding Co. v. Montana*,

691 F. App'x 326, 329 (9th Cir. 2017) (affirming "court's decision to consider" an expert report at summary judgment, although "the report was authenticated after it was filed").

### B.     Validity of the Release

Turning to the merits, the issue of the release's validity is governed by Texas law. In a diversity case like this, the Court "must apply the choice-of-law rules of the state in which it sits"—here, California. *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). "Under California choice-of-law rules, Texas law governs whether the [release] is enforceable because the [release's] choice-of-law clause adopts Texas law." *Peleg v. Neiman Marcus Grp.*, 140 Cal. Rptr. 3d 38, 69 (Ct. App. 2012); (*see* ECF 70-2, at 9–10 ("Governing Law and Venue" provision)).

Under Texas law, Batchelor has satisfied his initial burden of establishing the affirmative defense of settlement and release. A "release that is valid on its face and has not been set aside is a complete bar to any later action based on matters covered by the release." *Phan v. Addison Spectrum, L.P.*, 244 S.W.3d 892, 895 (Tex. App. 2008). Medlink does not dispute that the executed agreement here, which discharges Batchelor from "any and all claims" (ECF 70-2, at 5), is valid on its face and covers the present suit. (*See generally* ECF 77.) If this evidence is left uncontroverted, it would support summary judgment for the defense. *See Rodriguez v. Ginsburg*, No. 05-17-01266-CV, 2019 WL 4010770, at *6 (Tex. App. Aug. 26, 2019) (finding defendant's "evidence proves the release" when "summary judgment evidence included an executed copy of the settlement agreement containing a release," plaintiff did "not dispute that he signed the settlement agreement," and "[t]he broad language of the release shows that it was intended to address" the claims at issue); *Kennedy v. Harber*, No. 05-17-01217-CV, 2018 WL 3738091, at *4 (Tex. App. Aug. 7, 2018) (same).

The burden therefore shifts to Medlink to show that the release was procured through fraudulent inducement. Specifically, Medlink must establish the following elements relating to the release: (1) "a material representation was made," (2) "the representation was false," (3) "the speaker knew the statement was false when made," (4) "the statement

was made to induce reliance," (5) "it did induce reliance," (6) "the reliance was justifiable," and (7) Medlink "suffered injury as a result." *See Williams v. Dardenne*, 345 S.W.3d 118, 125 (Tex. App. 2011).

The fraudulent-inducement case stumbles early, as Medlink's evidence on the second element—a false representation—is wanting. According to Medlink, ECT falsely warranted in the release that it had "not facilitated the purchase or sale of any gowns by a DLA prime contractor under Defense Logistics Agency Solicitation No. SPE1C120R0138 using Wildcat PPE, LLC." (ECF 77, at 3; *see also* ECF 70-2, at 3.) In Medlink's view, this warranty is directly contradicted by the later deposition testimony of manufacturer Wildcat in a different lawsuit. (*See* ECF 77, at 5–6.) As we shall see, though, this deposition excerpt is too slender a reed to bear the weight Medlink places on it.[1]

In the all-important deposition upon which Medlink relies, non-party Wildcat's corporate designee testified about a text-message exchange he was shown (which has not itself been produced). The witness averred: "Looks—looks like Elgin was going to buy some gowns. Maybe he's the one that was buying the inventory. You know, I'm not sure. I think, actually, this was him buying that excess inventory." (ECF 77-2, at 28.) This supposedly damning evidence is notable for what's missing. First, the date of the text exchange is unknown. Next, the statement is unclear as to whether any gowns were ever actually purchased and, if so, whether that sale was "under Defense Logistics Agency Solicitation No. SPE1C120R0138." Finally, an "Elgin" is mentioned—which may refer to ECT Vice President Elgin Tracy—but otherwise no other parties to this possible ("maybe," "I think," "I'm not sure") gown transaction are specified. In particular, although Medlink

---

[1] Batchelor argues that the deposition excerpts "constitute layers of inadmissible hearsay and lack authentication." (ECF 84, at 3 n.1.) "The court need not rule on the[se] objections because the material objected to does not change the outcome of the motion[]." *Fireman's Fund Ins. v. National Bank for Cooperatives*, 849 F. Supp. 1347, 1352 n.1 (N.D. Cal. 1994).

believes this deposition "indicates that Mr. Batchelor misrepresented his involvement" with Wildcat (ECF 77, at 5), Batchelor's name does not appear in the quoted testimony.

In short, this contextless deposition excerpt of a non-party—about a text exchange on an unspecified date—cannot prove that ECT's representations in the release were "false *when made*." *See Williams*, 345 S.W.3d at 125 (emphasis added). Nor does it meet Medlink's burden as to the other elements. For example, Medlink claims in conclusory fashion that its "reliance on Batchelor's representations was reasonable and justifiable, given his professional standing and prior assurances." (ECF 77, at 3.) Yet Batchelor was not a signatory to the release (*see* ECF 70-2, at 11–14), nor is he mentioned in the relevant deposition excerpt (*see* ECF 77-2, at 28–29), nor does Medlink include any evidence of his alleged "prior assurances." Similarly, Medlink asserts that its damages are "significant" due to "being deprived of expected profits and additional losses from investments made in reliance" on the agreement. (ECF 77, at 3.) But where is the evidence? To support this allegation, Medlink cites to only the second amended complaint. (*Id*.) For summary judgment, however, the nonmoving party must "go beyond the pleadings and identify facts which show a genuine issue for trial." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). Medlink falls woefully short of this requirement.

Because "the record taken as a whole could not lead a rational trier of fact to find" for Medlink, "there is no genuine issue for trial" and Batchelor's summary-judgment motion is granted. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## MOTIONS TO SEAL

### A.    Motion to Seal the Confidential Agreement

Batchelor moves unopposed to seal the confidential agreement and portions of the briefing that "quote, describe, or reference" it. (ECF 69-1, at 2; ECF 74; ECF 83-1, at 2.) There is a "strong presumption of access to judicial records." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). To overcome this presumption, "compelling reasons must be shown to seal judicial records attached to a dispositive

motion." *Id.* "That is, the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* (cleaned up). This standard applies "even if the dispositive motion, or its attachments, were previously filed under seal or protective order." *Id.*

      Batchelor first claims sealing is necessary to "preserve the confidentiality of the contents" of the release "as agreed by the parties." (ECF 69-1, at 3; ECF 83-1, at 4.) But a "conclusory statement that the agreement contains a confidentiality clause, without more, does not rise to the level of compelling reasons sufficiently specific to bar the public access to the documents." *Helix Env't Plan., Inc. v. Helix Env't & Strategic Sols.*, No. 3:18-cv-02000-AJB-AHG, 2021 WL 120829, at *2 (S.D. Cal. Jan. 13, 2021).

      Next, Batchelor claims the parties would suffer "irreparable harm" if the release's contents were disclosed, and "[p]revention of competitive harm to a party is a compelling reason for sealing material." (ECF 69-1, at 4; ECF 83-1, at 4.) While "sources of business information that might harm a litigant's competitive standing" may be subject to sealing, "[s]imply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden." *Center for Auto Safety v. Chrysler Grp.*, LLC, 809 F.3d 1092, 1097 (9th Cir. 2016). Batchelor's "boilerplate assertion of competitive harm" is "[in]sufficient to meet [his] burden." *See A.B. v. Pacific Fertility Ctr.*, 441 F. Supp. 3d 902, 908 (N.D. Cal. 2020) (collecting cases).

      Finally, Batchelor contends that "the interests of the signatories to the Release in protecting disclosure of non-public, confidential information outweigh the public's interest in knowing such information," particularly because the release "does not concern conduct" that is in the public interest. (ECF 69-1, at 4; ECF 83-1, at 4–5.) The Court agrees, to an extent. The release is the entire basis of Batchelor's motion, while Medlink's opposition is grounded in the gown-purchasing clause. (*See generally* ECF 70; ECF 77.) As to these provisions, the balancing of "public and private interests" "tilt[s] toward disclosure because the information is the core of" the parties' arguments "and is therefore essential to enable

the public to understand these proceedings." *See Polaris Innovations Ltd. v. Kingston Tech. Co.*, No. SACV 16-00300-CJC (RAOX), 2017 WL 2806897, at *8 (C.D. Cal. Mar. 30, 2017) (citing *Center for Auto Safety*, 809 F.3d at 1098). So Batchelor's motion to seal is denied as to the release and gown-purchasing provisions, as well as to any part of the briefing and statements of fact that discuss or quote the agreement.

As for the rest of the agreement, it is not "essential to [the Court's] rulings" and thus "not necessary to the public's understanding of the case," so the "public . . . has minimal interest in this information." *See Apple Inc. v. Samsung Elecs.*, 727 F.3d 1214, 1226 (Fed. Cir. 2013). Thus, Batchelor's motion to seal the remainder of the agreement is granted. *See Brunson v. Lambert Firm*, 757 F. App'x 563, 566 (9th Cir. 2018) (holding "the district court did not abuse its discretion in declining to unseal the confidential agreement" because it "had nothing to do with the merits of the litigation").

**B.      Motion to Seal Deposition**

Medlink moves to seal the deposition of Wildcat's corporate designee, and Batchelor joins to the extent his reply discusses that deposition. (*See* ECF 78, at 2–3; ECF 83-1, at 5.) Most of the deposition transcript was not "essential" to this Court's rulings, nor to "the public's understanding of the case," so sealing is proper. *See Apple Inc.*, 727 F.3d at 1226. But the four lines of transcript Medlink relied on to assert fraudulent inducement are another matter entirely. (*See* ECF 77, at 5.)

Medlink worries that "[p]ublic disclosure" of those four lines "could give competitors access to business secrets or other proprietary information" and might "result in significant competitive harm." (ECF 78, at 3.) But, as explained above, such a "conclusory statement, without more, is insufficient to warrant a seal." *Avocados Plus Inc. v. Freska Produce Int'l*, No. 2:19-CV-06451-RGK-JC, 2019 WL 12345580, at *2 (C.D. Cal. Oct. 8, 2019).

Medlink also claims that because the deposition is marked "attorney's eyes only," its disclosure could result in "violation of any protective order made" in a separate legal proceeding. (ECF 78, at 3.) "[A] non-party's reliance on a blanket protective order,"

7

however, "is unreasonable and is not a 'compelling reason' that rebuts the presumption of access." *Kamakana*, 447 F.3d at 1183. In fact, "a litigant is not entitled to the court's protection from" "additional liability and litigation." *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1137 (9th Cir. 2003).

Because Medlink has not sufficiently justified sealing this key excerpt, the public has a right to access that transcript portion and any part of the briefing that quotes or discusses it.

### JUDICIAL-NOTICE MOTION

Batchelor requests judicial notice of five documents. (ECF 71-5.) "As the Court finds [none] of the documents referenced in the [request] necessary to resolve this [m]otion, the [judicial-notice request] is denied." *Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*, 445 F. Supp. 3d 695, 701 n.8 (C.D. Cal. 2020), *aff'd*, No. 20-55643, 2023 WL 4398498 (9th Cir. July 7, 2023).

### **CONCLUSION**

The Court orders as follows:

1. Batchelor's motion for summary judgment is **GRANTED**. The Clerk will enter judgment accordingly and terminate defendant Batchelor.

2. Batchelor's motions to seal the confidential settlement agreement and parts of the briefing that reference that agreement are **GRANTED IN PART**. The motions to seal are denied as to the release provision (ECF 70-2, at 3), the representation concerning gown purchasing (ECF 70-2, at 5), and any part of the briefs and statements of fact that discuss or refer to the agreement. Otherwise, these sealing motions are granted. Batchelor is ordered to re-file the lodged documents (ECF 70, 77, 84) forthwith, redacting only the portions this Court has allowed to remain sealed.

3. Medlink's motion to seal the deposition evidence is **GRANTED IN PART**. The motion to seal is denied as to the four lines Medlink cites to (ECF 79-1, at 28) and any parts of the briefing and statements of fact that discuss or refer to this excerpt. Otherwise,

this sealing motion is granted. Medlink is ordered to re-file the lodged document (ECF 79) forthwith, redacting only the portions this Court has allowed to remain sealed.

    4.    Batchelor's request for judicial notice is **DENIED**.

    5.    The Clerk is directed to maintain the provisional seal on the lodged documents. (*See* ECF 70, 77, 79, 84.)

Dated: September 12, 2024

                                  Hon. Andrew G. Schopler
                                  United States District Judge