# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDLINK HEALTH SOLUTIONS, LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>MADDOX DEFENSE INC., et al.,<br><br>                              Defendants. | Case No.: 22-cv-1306-BJC-DEB<br><br>**ORDER GRANTING, IN PART, MOTION FOR TERMINATING SANCTION**<br><br>**[ECF No. 131]** |

Plaintiff and Counterclaim-Defendant Medlink Health Solutions, LLC ("Medlink") and Counterclaim-Defendant Efraim Diveroli (collectively, "Medlink Parties") bring the present motion for terminating sanctions against Defendants and Counterclaim-Plaintiffs Maddox Defense Inc., Jason Maddox, and Maddox Industries, LLC ("Maddox Parties"). ECF No. 135.  The Maddox Parties opposed the motion.  ECF No. 138.  The Medlink Parties replied.  ECF No. 139.

### I.   RELEVANT BACKGROUND

On August 31, 2022, Medlink initiated this action against the Maddox Parties asserting causes of action for: (1) breach of written contract; (2) breach of oral agreement; (3) unjust enrichment; (4) fraud in the inducement; (5) fraudulent transfer; and (6) civil

extortion. ECF No. 1. On September 11, 2022, Medlink filed a First Amended Complaint which added additional jurisdictional language and alleged the same six causes of action. ECF No. 4. On December 15, 2022, the Maddox Parties answered the First Amended Complaint and asserted counterclaims for: (1) tortious interference with contract; (2) tortious interference with prospective economic advantage; (3) fraud; and (4) declaratory relief. ECF No. 20. On May 9, 2023, Medlink filed the operative Second Amended Complaint, adding additional defendants and again alleging the same six causes of action. ECF No. 44. On July 5, 2023, the Maddox Parties filed an amended answer asserting the same four counterclaims. ECF No. 50.

Throughout the pendency of this action, Maddox Parties and their counsel have failed to comply with the Federal Rules of Civil Procedure, this Court's Local Civil Rules, and have failed in their ethical duties and obligations to this Court. On October 20, 2023, counsel for the Maddox Parties ("Counsel") failed to appear at a Court-ordered hearing on a motion to extend scheduling order deadlines. *See* ECF No. 62. The Court ordered Counsel "to file a meaningful declaration regarding his failure to telephonically appear at the Motion Hearing." ECF No. 62. Upon submission of Counsel's declaration (ECF No. 64), the Court discharged the first Show Cause order without further action (ECF No. 67).

On November 16, 2023, the Court held a Status Conference pursuant to an October 20, 2023 court order. ECF No. 62. Counsel, again, failed to appear. ECF No. 73. The Court set a Show Cause hearing for December 13, 2023, and ordered Counsel to file a declaration by December 6, 2023. *Id*. No declaration was filed. ECF No. 93 at 2.

On December 6, 2023, the Court held a Settlement Status Conference pursuant to a November 28, 2023 court order. ECF No. 85. Counsel failed to appear at the December 6, 2023 conference, his third failure to appear in seven weeks. *See* ECF Nos. 62, 72, 86, 93. The Court issued an amended Show Cause order requiring Counsel to appear at a Show Cause hearing on January 4, 2024, and ordered Counsel to file a declaration regarding his failures to appear. ECF No. 87. Counsel timely filed a declaration (ECF No. 88) and appeared at the January 4, 2024 Show Cause hearing (ECF No. 90).

On January 17, 2024, the Court issued monetary sanctions against Counsel and ordered him to pay $526.50 in compensatory sanctions to Medlink, representing the attorney's fees the Medlink Parties incurred in preparing for and attending the November 16, 2023, and December 6, 2023 status conferences in which the Maddox Parties' counsel failed to appear. ECF No. 93. At that time, Counsel was "admonished to closely monitor the Court's docket and communicate promptly with opposing counsel as required by this Court's Local Rules and the Court's orders in this case." *Id.* The Court went on to say that "any subsequent violations of Court orders and/or failures to appear may result in more severe sanctions." *Id.*

The Maddox Parties' and their counsel's failure to adhere to court rules and orders did not stop there. On October 10, 2024, the Medlink Parties filed a motion seeking terminating sanctions, alleging that the Maddox Parties failed to comply with this Court's scheduling order—specifically that the Maddox Parties failed to file or respond to motions in limine, submit Rule 26(a)(3) disclosures, or participate in drafting the pretrial order in advance of the October 11, 2024 pretrial conference. ECF No. 108. The motion for terminating sanctions sought to strike the Maddox Parties' answer and requested entry of a default judgment. *Id.* The Medlink Parties also moved to dismiss the counterclaims against them. *Id.* In opposing the motion for terminating sanctions, the Maddox Parties "admit[ed] that [they] failed to timely comply with the Scheduling Order." ECF No. 115 at 2. The Maddox Parties provided that their failure to comply with the scheduling order was because they "were under the impression, due to statements made by Plaintiff, that a resolution was imminent and relied on this information in not pursuing its discovery requests or trial preparation." *Id.* at 3. Additionally, the Maddox Parties claimed that the failure to comply with the scheduling order "was due to error or mistake on the part of counsel." *Id.* at 6. The Maddox Parties did not provide any substantiating evidence as to why this "error or mistake" occurred.

On November 26, 2024, the Court held a hearing on the October 10, 2024 motion for sanctions and weighed the Ninth Circuit's *Malone* factors to determine whether

terminating sanctions were appropriate—the *Malone* factors are: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. *See Hester v. Vision Airlines, Inc.*, 687 F. 3d 1162, 1169 (9th Cir. 2012) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)). Upon weighing the factors, the Court granted the motion in part. ECF No. 117. The Court denied the request for terminating sanctions but ordered the Maddox Parties to pay fifty percent of the Medlink Parties' reasonable fees for bringing the motion.[1] *Id*. At the hearing, the Court provided the parties with the following warning and notice:

> This Court has never warned defendants that failure to comply with a pretrial scheduling order will result in dismissal. I would say, having worked through the analysis here, that the parties should be on notice at this point . . . and are warned that failure to comply with court orders, and particularly scheduling orders, does run the risk of drastic sanctions, including dismissal.

Transcript from November 26, 2024 Hearing (*see* ECF No. 117) at 5.

On January 7, 2025, the Court set a final pretrial conference for April 11, 2025.[2] ECF No. 118. The order set deadlines for motions in limine and Rule 26(a)(3) disclosures, and stated that "the parties must refer to the Civil Local Rules and [the Judge's] Civil Chambers Rules for all other pretrial requirements and deadlines." *Id.*

Pursuant to Civil Local Rule 16.1.f.4.b, the Medlink Parties produced their trial exhibits on March 21, 2025. ECF No 131-2 at 16; *see* Civ.L.R. 16.1.f.4.b. ("At the

---

[1] Fifty percent of the Medlink Parties' reasonable fees for bringing the sanctions motion was approximately $2,500-$3,000. Transcript from May 22, 2025 Hearing (*see* ECF No. 146) at 6.

[2] The final pretrial conference scheduled for October 11, 2024, was converted to a status conference due to the Maddox Parties' failure to comply with the scheduling order and other pretrial requirements and deadlines.

[pretrial] meeting [of counsel], all exhibits other than those to be used for impeachment must be displayed or exchanged."). On March 24, 2025, the Medlink Parties requested a meet-and-confer to discuss the Maddox Parties' failure to disclose their trial exhibits. ECF No. 131 at 3. In response, the Maddox Parties stated that "everything was disclosed in the Rule 26 disclosures," "there was no prejudice," and the Medlink Parties were "welcome to file whatever [was] necessary and appropriate." *Id.* On April 7, 2025, the Medlink Parties filed the instant motion asking for terminating sanctions under Federal Rules of Civil Procedure 16 and 41, asking the Court to strike the Maddox Parties' answer, enter a default judgment against the Maddox Parties, and dismiss the Maddox Parties' counterclaims. ECF No. 131.

The Maddox Parties' opposition, filed on April 25, 2025, is devoid of any factual justification for their failure to comply with the local rules. *See generally* ECF No. 138. Rather, the Maddox Parties argue that "Plaintiff has not been prejudiced by the actions of Maddox Defendants because it has been in possession of the pertinent documents well before the exchange timing set forth in Local Rule 16.1(f)(4)(b)." *Id.* As of April 28, 2025, when the Medlink Parties filed their reply to the request for sanctions, the Maddox Parties still had not displayed or exchanged the exhibits. ECF No. 139 at 4; *see generally* ECF No. 138 (the opposition to the motion for sanctions does not deny that the Maddox Parties failed to comply with the local rules). On May 7, 2025, thirty days after this sanctions motion was filed, and the day before the Court was initially scheduled to hear oral argument on the motion, the Maddox Parties finally exchanged their trial exhibits with opposing counsel.[3] Transcript from May 22, 2025 Hearing (*see* ECF No. 141) at 2.

---

[3] Oral argument on Plaintiff's motion to withdraw as counsel (ECF No. 132) and Plaintiff's motion for sanctions (ECF No. 131) was originally scheduled for May 8, 2025. At the May 8, 2025 hearing, the Court heard argument on the motion to withdraw but continued the hearing on the motion for sanctions. Transcript from May 8, 2025 Hearing (*see* ECF No. 141).

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 16(f) provides that "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). Additionally, it provides that the court "must order the [violating] party, its attorney, or both to pay reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award unjust." Fed. R. Civ. P. 16(f)(2). "In deciding whether a sanction is merited, the court need not find that a party acted in bad faith. The fact that a pretrial order was violated is sufficient to allow some sanction." *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 368 (E.D. N.Y. 2013) (citing 6A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1531 (3d ed. 1998)).

Under Rule 37(b)(2) the court may issue terminating sanctions in the form of "striking pleadings in whole or in part," "dismissing the action or proceeding in whole or in part," or "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A). Pursuant to Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules] or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). The standards governing dismissal under Rules 41(b), 16(f), and 37(b)(2) are essentially the same. *Malone*, 833 F.2d at 130.

District courts also have inherent power to impose sanctions to manage their cases and courtrooms effectively, ensure the orderly administration of justice, and to enforce compliance with their orders. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994); *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 965 (9th Cir. 2004); *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) ("Dismissal under a court's inherent powers is justified . . . in response to abusive litigation practices . . . and to insure the orderly administration of justice and the integrity of the court's orders."). Indeed, "courts cannot function efficiently unless they can effectively require compliance with reasonable rules." *Chism v. Nat'l Heritage Life Ins. Co.*, 637 F.2d 1328, 1332 (9th

Cir. 1981), *overruled on other grounds by Bryant v. Ford Motor Co.*, 832 F.2d 1080 (9th Cir. 1987). "Absence of meaningful power to require that compliance would make for disorder and preclude effective judicial administration." *Id.* "Broad discretion is given to district courts as to the type of sanctions that are appropriate under their inherent powers." *Coulter v. Baca*, No. 13-CV-6090-CBM-AGRx, 2014 WL 12589652, at *2 (C.D. Cal. May 23, 2014)

In extreme circumstances, a court may use its inherent power to enter terminating sanctions (e.g. striking a party's pleading in whole or in part and entering default judgment against the party or dismissing the action) against a party that repeatedly and willfully violates the district court's orders. Fed. R. Civ. P. 16(f)(1); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Dismissing or entering default is appropriate only where a court finds that the party's conduct demonstrates willfulness, fault, or bad faith. *Leon*, 464 F.3d at 958 (citing *Anheuser-Busch v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).

### III.   DISCUSSION

**A.   Extraordinary Circumstances, Willfulness, Bad Faith, or Fault**

"[E]xtraordinary circumstances exist where there is a pattern of disregard for court orders and deceptive litigation tactics that threaten to interfere with the rightful decision of a case." *Englebrick v. Worthington Indus., Inc.*, 944 F. Supp. 2d 899, 909 (C.D. Cal. 2013) (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1071 (N.D. Cal. 2006)). Extreme circumstances and bad faith are similar considerations which do not establish a precise substantive standard, but rather suggest the conditions under which a dismissal under a court's inherent powers might be appropriate. *Halaco*, 843 F.2d at 380; *see also United States v. Kinetic Concepts, Inc.*, No. CV0801885BROAGRX, 2017 WL 8948062 (C.D. Cal. Aug. 21, 2017); *Coulter*, 2014 WL 12589652, at *3.

All that is required to demonstrate willfulness, bad faith, or fault is misconduct not shown to be outside a party's control. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) ("Disobedient conduct not shown to be outside the control of the litigant is all

that is required to demonstrate willfulness, bad faith, or fault."). For the purposes of determining bad faith, counsel's actions can be imputed onto his client. *See W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1523 (9th Cir. 1990) ("The established principle is that the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client.").

The Maddox Parties have shown a pattern of willful disregard for court orders throughout this litigation. First, the Maddox Parties disregarded court orders when they failed to appear at court-order the hearings and status conferences on October 20, 2023, November 16, 2023, and December 6, 2023. ECF Nos. 62, 72, 73, 86, 93. Second, counsel for the Maddox Parties failed to file a declaration in response to a court order. ECF No. 93. Third, the Maddox Parties disregarded the scheduling order when they failed to file or respond to motions in limine, submit Rule 26(a)(3) disclosures, and participate in drafting the pretrial order. ECF No. 117. Finally, the Maddox Parties disregarded court orders and the civil local rules when they failed to present and exchange their trial exhibits at the pretrial meeting of counsel. ECF Nos. 131, 138. The Maddox Parties have not presented any evidence showing that their failure to comply with any of these court orders was beyond their control. Thus, the Court finds that the Maddox Parties have acted willfully and have demonstrated a pattern of disregard for court orders. *See Gibbs v. Nate-N-Al's Deli*, 79 F.3d 1153 (9th Cir. 1996) (holding that a litigant acted willfully, justifying dismissal, when she did not demonstrate that her failure to pay sanctions or to reschedule her deposition was beyond her control); *see also Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997). Having found the Maddox Parties' actions to have been willful, the Court next balances the factors outlined by the Ninth Circuit to determine whether their conduct has so impaired this litigation that terminating sanctions are warranted. *See Malone*, 833 F.2d at 130.

**B.     The *Malone* Factor Test**

A district court must weigh five factors in determining whether or not to dismiss a case for failure to comply with a court order: (1) the public's interest in expeditious

resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Hester*, 687 F. 3d at 1169 (quoting *Malone*, 833 F.2d at 130). The test is a disjunctive balancing test, thus, not all five factors must support dismissal. *See Bolden v. Los Angeles County Sheriff,* 2008 WL 1969230, *5 (C.D. Cal. April 30, 2008) (citing *Hernandez v. City of El Monte,* 138 F.3d 393, 399 (9th Cir. 1998)) (explaining that dismissal is appropriate when four factors support dismissal or where three factors "strongly" support dismissal). Additionally, the factors are not conditions precedent or a script the district court must follow, but "a way for a district judge to think about what to do." *Valley Eng'rs Inc. v. Elec. En'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

The Ninth Circuit has made clear that when a court order serves as the basis for a terminating sanctions request, factors (1) and (2) support the imposition of such sanctions and factor (4) cuts against them. *Valley Eng'rs, Inc. v. Elec. Eng'g Co.,* 158 F.3d 1051, 1057 (9th Cir. 1998) (citing *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1412 (9th Cir. 1990)). Thus, factors (3) and (5) are the critical factors to consider. *Id.* Accordingly, the Court focuses its analysis on the third and fifth factors.

1. <u>Factor 3: The Risk of Prejudice to the Other Party</u>

In determining whether a party has been prejudiced, the Court examines whether the actions will impair the party's ability to go to trial or threaten to interfere with the rightful decision of the case. *Malone*, 833 F.2d at 131. Delay alone has been held to be insufficient prejudice. *See U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.,* 857 F.2d 600, 604 (9th Cir. 1988). However, repeated failures to appear at scheduled dispositions, in conjunction with refusal to comply with court-ordered production of documents, constituted an interference with the rightful decision of the case and was sufficient to establish prejudice. *Adriana Int'l Corp.*, 913 F.2d at 1412. Prejudice may also consist of "costs or burdens of litigation" incurred because of the misconduct. *Phenylpropanolamine Prods.*, 460 F.3d at 1228. Additionally, cost and delay associated with behavior that

interferes with the ability to conduct a settlement conference has been found to create a sufficient risk of prejudice to the opposing party to weigh in favor of case-dispositive sanctions. *See BP W. Coast Prods. LLC v. Crossroad Petro., Inc.*, Case No. 12-cv-665-JLS-JLB, 2017 WL 4586350, at *5 (S.D. Cal. Oct. 13, 2017), *adopted*, 2017 WL 5864680 (S.D. Cal. Nov. 29, 2017) (issuing terminating sanctions when defendants failed to appear at two court-ordered mandatory settlement conferences); *see also Bykov v. 7435 159th Place NE, LLC*, Case No. C 08-0802-RAJ, 2009 WL 10694432, at *2 (W.D. Wash. Apr. 15, 2009).

Here, the Maddox Parties failed to appear at three court-ordered proceedings, failed to respond to a show cause order, and failed to comply with the Court's Scheduling Order by failing to respond to motions in limine, not submitting Rule 26(a)(3) disclosures, and not participating in drafting the pretrial order. Now, the Maddox Parties have, yet again, failed to adhere to this Court's orders and the Civil Local Rules. *See* ECF No. 93; *see also* ECF No. 118 ("the parties must refer to the Civil Local Rules . . . for all other pretrial requirements and deadlines").

Civil Local Rule 16.f.4 requires counsel to meet and confer at least twenty-one (21) days in advance of the pretrial hearing. "At the meeting, all exhibits other than those to be used for impeachment must be displayed or exchanged." *Id.* at 16.f.4.b. Pursuant to the Local Rules, the parties met and conferred. ECF No. 131-2 at 3. On March 21, 2024, the Medlink Parties sent their trial exhibits to the Maddox Parties, but the Maddox Parties did not disclose their exhibits to the Medlink Parties. *Id.* On March 24, 2025, the Medlink Parties requested a meet-and-confer regarding the Maddox Parties' failure to disclose their exhibits. *Id.* Thus, the Maddox Parties have been on notice since at least March 24, 2025, of the Civil Local Rule requiring the parties to display or exchange all trial exhibits.[4] Yet,

---

[4] The Maddox Parties apparent ignorance of Local Rule 16.1 is not an excuse for their failure to abide by the Local Rules. *See* ABA Model Rules of Pro. Conduct r. 1.1 ("A lawyer shall provide competent representation to a client. Competent representation

the Maddox Parties waited until May 7, 2025, to exchange their trial exhibits.

The Maddox Parties continue to willfully ignore court orders and the Local Rules but contend that sanctions are not warranted since "Plaintiff has not been prejudiced by the actions of Maddox Defendants because it has been in possession of the pertinent documents well before the exchange timing set forth in Local Rule 16.1(f)(4)(b)."  ECF No. 138.  Specifically, the Maddox Parties argue that the exhibits at issue are "in Plaintiff's possession" and were either filed with the "Second Amended Answer and Counterclaim, with the Mandatory Settlement Conference Brief, the Early Neutral Evaluation Statement or are duplicates of exhibits identified by Plaintiff as being used at trial or were previously used by Plaintiff."  ECF No. 138.

The Medlink Parties argue that the Local Rule "requires formal production of exhibits for trial—not vague references to documents scattered in prior filings."  ECF No. 139.  The Medlink Parties contend that they "cannot meaningfully prepare trial objections, cross-examinations, or rebuttal evidence," and "Defendants have deprived Plaintiff of the orderly and fair trial preparation process mandated by the rules."  *Id.*  The Court agrees.

In this case, the Medlink Parties have suffered increased costs and burdens throughout this litigation because of the Maddox Parties' failures to abide by court orders and local rules.  Perhaps most astonishing to the Court is that, even after the motion for sanctions was filed, and the Maddox Parties were made aware of the local rule requiring the exchange of trial exhibits, the Maddox Parties waited an additional 30 days before

---

requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."); *see also* Fed. R. Civ. P. 1 (The Federal Rules of Civil Procedure should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *see also* Civ.L.R. 83.1 ("Failure of counsel, or of any party, to comply with these rules, . . . or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or rule or within the inherent power of the Court, including, without limitation, dismissal of any actions, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions.")

complying with Local Rule 16.1, thus depriving the Medlink Parties of time to review the trial exhibits before the looming trial date. Upon receiving and reviewing the exhibits, the Medlink Parties state that "there are a number of issues" with the exhibits and that "had [they] received these exhibits earlier, hopefully, [they would] have been able to work them out, not on the eve of trial." Transcript from May 22, 2025 (*see* ECF No. 146) at 2. Accordingly, the Maddox Parties' continued and flagrant disregard for court orders and court rules is sufficient to establish prejudice. *See Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) ("We have repeatedly upheld the imposition of the sanction of dismissal for failure to comply with pretrial procedures mandated by local rules and court orders) (citing *Buss v. Western Airlines, Inc.,* 738 F.2d 1053 (9th Cir.1984), *cert. denied,* 469 U.S. 1192, (1985)); *Chism,* 637 F.2d 1328; *Transamerica Corporation v. Transamerica Bancgrowth Corp.,* 627 F.2d 963 (9th Cir.1980). This factor weighs in favor of dismissal.

C.      **Factor 5: The Availability of Less Drastic Sanctions**

In *Kahaluu Const.,* the Ninth Circuit opined that "the district court is generally required to discuss alternative sanctions; but, in exceptional cases, where it is clear that no other alternative would have been reasonable, we may affirm a dismissal or default judgment despite the absence of such a discussion." *Id.* (citing *Halaco,* 843 F.2d at 381 ("[C]onsideration of less severe penalties must be a reasonable explanation of possible and meaningful alternatives."); *Anderson v. Air West, Inc.,* 542 F.2d 522, 525 (9th Cir. 1976) ("'reasonable exploration of possible and meaningful alternatives' is required, although it is not necessary that every possible alternative be explored."). The fact that a court "actually implemented alternative sanctions prior to dismissal may be enough to satisfy the 'consideration of alternatives' requirement." *Kahaluu Const.*, 857 F.2d at 604 (citing *Malone,* 833 F.2d at 132). The *Kahaluu Const.* court further cited to *Malone* for the proposition that a "series of sanctions . . . constitut[es] a natural progression, much like progressive discipline, with dismissal being the last step." *Id.* If a court fails to warn a claimant "explicitly or implicitly that their procedural lapses might result in a judgment

against them," then it places that court's order of dismissal "in serious jeopardy." *Id.*

A "three-part analysis determines whether a court properly considered the adequacy of less drastic sanctions: (1) did the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inappropriate, (2) did the court implement alternative sanctions before ordering dismissal, and (3) did the court warn the party of the possibility of dismissal before actually ordering dismissal?" *U.S. Equal Employment Opportunity Com'n v. ABM Industries Inc.,* 2009 WL 1287757, *4 (E.D. Cal. May 7, 2009) (quoting *Adriana Intern. Corp.,* 913 F.2d at 1412–1413).

Here, the Court previously discussed less drastic sanctions and imposed them. ECF Nos. 93, 117. In January 2024, the Court issued monetary sanctions in the amount of $526.50 against the Maddox Parties' counsel and warned the parties that "any subsequent violations of Court orders and/or failures to appear may result in more severe sanctions." *Id.* Then in November 2024, the last time the Court was asked to issue terminating sanctions against the Maddox Parties, the Court declined to do so. ECF No. 117. Instead, the Court issued a harsher monetary sanction than was previously issued, and warned the Maddox Parties that "failure to comply with court orders, and particularly scheduling orders, does run the risk of drastic sanctions, including dismissal." Transcript from November 26, 2024 Hearing (*see* ECF No. 117) at 5.

The Court finds that it previously tried alternative, less drastic sanctions, and explicitly warned the Maddox Parties that failure to adhere to court orders may result in dismissal. *See Lewis v. Caesars Ent. Corp.*, No. 16-CV-02787-JAD-NJK, 2019 WL 1571281, at *7 (D. Nev. Apr. 11, 2019), *report and recommendation adopted*, No. 16-CV-02787-JAD-NJK, 2019 WL 1937564 (D. Nev. Apr. 30, 2019) (finding case-dispositive sanctions appropriate after the court provided numerous warnings, including expressly contemplating that case-dispositive sanctions, and had previously imposed monetary sanctions). These previous warnings and sanctions have proven insufficient to deter the Maddox Parties' from continued misconduct. Accordingly, the fifth factor is met and weighs in favor of issuing terminating sanctions.

## IV. CONCLUSION

Based on the forgoing analysis, the Court **DISMISSES** the Maddox Parties counterclaims **WITH PREJUDICE**. ECF No. 50; *see Sorokin v. Sandoval*, No. 10-CV-1842-WQH-BLM, 2011 WL 3205302, at *2 (S.D. Cal. July 25, 2011) (dismissing the matter with prejudice after finding terminating sanctions appropriate); *Pham v. Talkdesk, Inc.*, No. 22-CV-05325-MCS-JPR, 2023 WL 5667563, at *6 (C.D. Cal. July 11, 2023), *aff'd*, No. 23-55711, 2024 WL 4532896 (9th Cir. Oct. 21, 2024) ("the Court dismisses the SAC in its entirety with prejudice"); *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 691 (1st Cir. 1993) (upholding the district court's decision to dismiss counterclaims with prejudice when the defendant failed to appear at a scheduled pretrial and settlement conference, failed to prepare a pretrial order, and failed to otherwise comply with court orders). Given this extraordinary sanction, the Court declines to impose any monetary sanctions.

**IT IS SO ORDERED**.

Dated: June 5, 2025

_Bryan Cheeks_

Honorable Benjamin J. Cheeks
United States District Judge